## CAROLYN J. LELAND, Appellant, v. ROBERT LELAND, Respondent.

No. 3806

December 27, 1955.                                     291 P.2d 905.

*Springmeyer & Thompson*, of Reno, for Appellant.

*John S. Sinai* and *David Sinai*, of Reno, for Respondent.

## OPINION

By the Court, Badt, J.:

Carolyn J. Leland has appealed from a judgment granting a divorce to her husband Robert Leland on the ground of extreme cruelty and contends (1) that the evidence is wholly insufficient to support a finding of

extreme cruelty on her part; (2) that it is insufficient to support a finding that her husband's health was injured or endangered by reason of any misconduct of hers; and (3) that the court erred in its order for her support and maintenance and determination of property rights because it made no just, equitable and reasonable division of the community property of the parties. We treat each of these assignments in the order mentioned.

(1) On August 18, 1952 Robert Leland obtained a divorce from his first wife, Beatrice, in Washoe County, Nevada. On the same date appellant Carolyn Leland obtained a divorce, in the same county, from Henry F. W. Thomas, who was her second husband. On the same date Carolyn and Robert were married in Reno. Robert had known Henry Thomas for over twenty years. They had been fraternity brothers at Amherst College. Immediately following the marriage Robert and Carolyn went to Bethesda, Maryland, where they lived for two months in a home owned by Thomas. With them were the two children, the issue of Carolyn's marriage to Thomas and whose custody had been awarded to her with right of visitation in Thomas. The dangers and pitfalls of such a situation soon became apparent. Thomas' visits to his children at the Leland home were made weekly and sometimes more frequently, and within a month numerous quarrels occurred between Robert and Carolyn over these visits. A possible divorce was discussed on several occasions. In November, 1952, the parties moved to Washington, D. C., where Thomas continued to visit the children. Although the situation bettered itself from time to time, the irritation and the quarrels continued until Robert left the home in September, 1953, established residence in Nevada, and commenced his action for divorce there, which was tried in April, 1954.

Leland, to whose testimony the trial court apparently gave credence, testified that shortly after the marriage his wife told him she wished she was still married to

Thomas; that she was overfriendly with him and, over Leland's objections, continually invited him into the home; that she made comparisons about the sexual prowess of Leland and of her second husband; that she said that Thomas was a better father than Leland; that when Leland and his wife wanted to go out for the evening she invited Thomas, over the objections of Leland, to come over to their house to take care of the children; that Carolyn unjustifiably criticized the character and upbringing of Robert's two children by his prior marriage; that she was unfair in the punishment of his children as compared with the disciplining of her children; that she continued to show an obvious warmth and friendship for her former husband despite Robert's protestations; that, over Robert's objections, she invited her brother to the home where he was a constant visitor and where his visits were particularly objectionable because of his excessive use of alcohol. Robert testified to one occasion at which she had called him names and humiliated him in the presence of others. Carolyn denied much of this testimony but agreed that the situation was one of constant tension and quarreling, although she maintained that her relations with her former husband were objective and formal. The court was able to observe the demeanor of both parties on the stand and to judge of their credibility. We are unable to say that its findings of extreme cruelty on the part of Carolyn toward Robert are without support and we find this assignment to be without merit.

(2) Nor are we able to say that the court's finding that Robert's health was injured and endangered by reason of Carolyn's conduct is without support. He testified that his wife's conduct increased his nervousness, that he developed stomach pains, was unable to sleep well and that his blood pressure increased to the end that he consulted his family physician. After the separation these symptoms disappeared and he gained fifteen pounds in weight.

(3) Approximately one-half of the 150-page transcript, in addition to numerous exhibits comprising financial statements, copies of income tax returns, etc., are devoted to an attempt to ascertain the precise amount of the community property owned by the parties at the time of the divorce. In considering this we may assume for the sake of argument that the property in question was community property, although the record does not indicate that the husband's earnings during coverture were in community property jurisdictions. The husband had, prior to his marriage, formed two corporations, in one of which he owned all of the stock and in the other two-thirds of the stock. Through these corporations he dealt with government surplus commodities and there were numerous transactions between himself on the one hand and the corporations on the other. During the years prior to his marriage the corporations prospered and Leland enjoyed a large income. In January, 1953, he drew as salary, presumably for 1952, the sum of $14,400, and during the year 1953 he drew $13,400. As to all of his income, Leland testified that it had all been spent. He also testified that his stock in the two corporations was of little value.

"In granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community property of the parties as shall appear just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and the party through whom the property was acquired * * *." Sec. 9463, N.C.L., 1943–1949 Supp. The court awarded to Carolyn $200 a month for twelve months for her support and maintenance and determination of property rights. (It may also be noted that Carolyn was receiving $100 a month from her former husband for the support of her two children by that husband.) The wife contends that an analysis of the income tax returns of her husband and of the various transactions had between Leland and his

two corporations indicate his ownership of concealed assets amounting to substantial sums of money. The trial court was not impressed with these contentions beyond its conclusion that the aggregate $2,400 allowed the wife was a fair and equitable apportionment of the community property under the conditions imposed by the statute. It chose to believe the husband's testimony that the day of large profits growing out of the purchase and sale of government surplus property was past; that Leland's two corporations were devoid of substantial assets; and, by implication, concluded that no community property could be traced into those corporations and that there was no showing of any substantial amount of community property in the possession of the husband. The only finding of fact made by the trial court on this issue was "that defendant is entitled to the sum of $200 each month * * * for the full period of twelve months as and for her support and maintenance and determination of property rights." No more specific findings were requested by the wife. As in the first two assignments of error, so here our duty goes no further than to determine whether there is substantial support for the finding. Such we find to be the case.

The judgment is affirmed without costs to either party.

MERRILL, C. J., and EATHER, J., concur.