## RUTH B. MARSHBURN, Appellant, v. WILLIAM MARSHBURN, Respondent.

No. 4378

April 17, 1961                    361 P.2d 112

*C. Norman Cornwall* and *D. Owen Nitz,* both of Las Vegas, for Appellant.

*V. Gray Gubler,* of Las Vegas, for Respondent.

## OPINION

By the Court, BADT, C. J.:

Under the issues raised by the husband's suit for divorce on the ground of extreme cruelty and the wife's counterclaim for separate maintenance on the ground of

the husband's extreme cruelty, the court granted the husband a divorce. The wife has appealed, specifying as error that the asserted mental cruelty of the wife was not shown to have resulted in danger to the life, limb, or health of the husband, or in the reasonable apprehension of such danger.

The parties were married in Phoenix, Arizona, September 1955. In the spring of 1957, while they were living in Pasadena, California, the husband was attending school and the wife was attending school part time and also attending a modeling school in Pasadena. The wife was twenty years old and the husband in his twenties. The wife started to model at various places and the parties quarreled. "[S]he told me her nerves were on a tight string, and it was the first time she had ever gotten mad enough that she wanted to kill me." They separated but had a reconciliation after some five months, went back together in September 1957, and lived at Long Beach, California. The husband was employed as a dispatcher for Marshburn Farms and worked from 12:00 midnight to 7:00 a. m.

The evidence shows that from this point on the wife commenced a series of escapades with other men to such extent as to be altogether intolerable to any husband. We omit the details. The husband's remonstrances were received with flippant replies or with his wife's refusal to discuss the matter with him.

When one considers the tortured frame of mind of a young husband knowing that the wife with whom he is in love is spending night after night with some other man, one must be astonished at his understatements of the effect this had on him. "Well, I was nervous at the time. I just felt bad about it, you know. I felt bad. * * * It made me nervous because I never knew where she was." On cross-examination he stated that his wife's conduct did not affect his appetite or his sleep. One could hardly picture a worse witness in his own behalf. He finally did concede: "Well, I am edgy and irritable. I can't get along with anybody, and I was about the hardest guy to work with down there [at the produce plant]." And he finally did testify that he could not live under

existing conditions and enjoy good health. In such case reliance must be placed upon the trial court's observation of the witness and the trial court's evaluation of his testimony. If overstatements and gross exaggerations become evident to the trial judge from his observation of the demeanor of the witness, so likewise do understatements, shyness, and timidity.

In Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355, 360, this court noted that it had not departed from the rule that the conduct complained of (as constituting extreme cruelty) must result in danger to life, limb, or health, or in the reasonable apprehension of such danger. In that case the parties had raised a large family, and the husband had been treating his wife with increasing harshness and indifference as to her happiness or welfare. During the entire period she did a man's work on the ranch. She finally left. She had been irrigating, helping with the haying, trying to keep a garden, and keeping house, and stated that she was "just about ready to break down," that she was "all in." This court remarked: "This is the only testimony bearing directly upon the effect appellant's treatment had upon the respondent." Against the appellant's insistence that it was not enough and did not establish danger to health, life, or limb, or the reasonable apprehension thereof, we replied: "We think it does. We cannot always expect that a party in a divorce action will express himself explicitly. In such a matter as this we must to a great extent rely on the trial judge's impressions. He sees and hears the witnesses, and acquaints himself with the way in which a witness expresses himself. He is in a better position to observe the conduct and demeanor of the witness and whether the witness tends to overstate or understate his testimony."

Where the same question was raised in Coolman v. Coolman, 76 Nev. 43, 348 P.2d 471, 472, this court said, in considering whether the conduct complained of resulted in danger to life, limb, or health, or reasonable apprehension of such danger: "[T]he court is obliged to consider the character and refinement of the parties, and the conclusion to be reached must depend upon the particular facts of each case * * *. The trial judge * * *

would be in a position to evaluate [the parties'] character and refinement as well as [their] sensibilities * * *. It is upon such evaluation rather than upon the testimony of the complaining party alone that his determination of the effect of the cruel treatment upon the health of the injured spouse should be based."

The trial court found: "That the defendant has since and during said marriage been guilty of extreme cruelty (mental in character) toward the plaintiff without cause therefor, and that said plaintiff's health was and is thereby and therefrom impaired." If such was the court's conviction resulting from the husband's testimony, it was justified under our holdings in the Ormachea and Coolman cases, supra.

The wife also assigns error in the court's finding that there was no community property belonging to the parties. The husband's parents had assigned to him a 5 percent interest in Marshburn Farms. The wife contended that this was a gift to her husband and herself. The husband testified that this gift was made to him individually in like manner as a 5 percent interest had been made to other members of the immediate family. In support of his testimony there was received in evidence the original assignment of such interest running directly to William Marshburn. No consideration was paid for it. Even if received by the husband during coverture, the gift became his separate property. This is the only item which the wife contends was community property. The finding that the parties had no community property was, therefore, amply supported.

The judgment is affirmed.

PIKE and McNAMEE, JJ., concur.