## JONATHAN A. SISSON, Appellant, v.
## SHIRLEE VAUGHN SISSON, Respondent.

No. 4407

December 13, 1961                    367 P.2d 98

(Rehearing denied January 8, 1962.)

*Sinai & Sinai*, of Reno, for Appellant.

*Breen, McDonald & Young*, of Reno, for Respondent.

# OPINION

By the Court, THOMPSON, J.:

This is a divorce case. We shall refer to the parties as wife and husband, and to the three minor children, collectively, as the children.

The wife commenced suit, charging extreme cruelty, requesting a divorce and custody of the children, ages 9, 6 and 4, who were residing with her in Nevada. The husband, by answer and counterclaim, sought to deny the wife any relief and requested a divorce because of the unforgiven adultery of the wife.

He also asked for custody of the children. In reply, the wife admitted the husband's charge of adultery. After a pre-trial conference, by consent of the parties and order of the court, the action was referred to a Special Master "to diligently hear and determine all proper matters now pending, or hereafter arising, in said action to the final conclusion thereof by the Court." After a lengthy hearing, the Master prepared and filed a report wherein he recommended that the wife be granted a divorce and custody of the children, with the right of visitation in the husband; that the husband pay $50 a month for each child as support and, in addition, set aside $6,246.90 in trust with the First National Bank of Nevada to be later disbursed for the benefit of the children "at the rate of $50 per month each, from and after the fifteenth (15th) anniversary of their respective births." The exhibits received in evidence, the transcript of testimony, and proposed forms of findings of fact, conclusions of law, and judgment, were submitted with the report for consideration by the court.

Objections to the Master's report and proposed findings, conclusions and judgment were interposed by the husband, and argument thereon heard by the court. Thereafter the court signed the findings, conclusions and judgment as submitted by the Master and without change. Such documents conform to the recommendations contained in the Master's report above related.

The husband appeals from the judgment thus entered, assigning many errors. Only two need be considered: First, the claimed error in awarding the wife a divorce as the "party least in fault." NRS 125.120. Second, the claimed error in awarding custody of the children to the wife. NRS 125.140.

Before discussing these matters, however, we desire first to resolve a dispute between the parties as to the function and power of this court upon review. The appellant husband contends that, as the findings, conclusions and judgment by the lower court were based solely upon a *written record* and without the benefit of "demeanor evidence," this court, on review, may exercise its independent discretion without regard to the findings made below and the conclusions drawn therefrom; that the appellate court is in the same position as the lower court and, therefore, may independently weigh and evaluate the written record presented. On the other hand, the respondent wife insists that this court may not weigh and evaluate such written record. To the contrary, it must approve the findings of fact made, if supported by substantial evidence.

In Garaventa v. Gardella, 63 Nev. 304, 309–313, 169 P.2d 540, 543–545, the same question was presented for determination, and was resolved. The court said: "One of appellant's contentions is that the trial court's decisions, findings, and judgments are not supported by, and are contrary to, the evidence. In the consideration of this assignment the court is confronted with an important preliminary question arising out of the fact that the evidence in the two consolidated cases tried before Judge Salter consists entirely of the transcript of testimony taken orally in the case tried before Judge Maestretti, and the documentary exhibits in that case. Appellant maintains that as the trial judge had no opportunity of observing the witnesses while testifying, and their demeanor on the witness stand, this court is as capable of examining the evidence and drawing conclusions from it as was the court below, and that for this reason we should reexamine the entire case, determine for ourselves the weight of the evidence and credibility

of the witnesses, and draw our own conclusions. Respondent's position on this question is that under the constitution and statutes of Nevada this court has no power, in the exercise of its appellate jurisdiction, to try an appealed case on the facts de novo; that where, as here, there is a substantial conflict of evidence, the action of the trial court in determining the credibility of witnesses is not to be disturbed on appeal if that court's findings have any substantial support in the evidence. * * *

"After careful consideration of sec. 4 of art. VI of our state constitution and the conflicting decisions of the courts, we do not feel that this court can ignore the jurisdictional question. In our opinion the correct rule is that even where the evidence was all in writing, the trial court's findings will not be set aside unless clearly or manifestly against the weight of the evidence, or without any reasonable support therein. Of the numerous authorities sustaining this rule, we cite but a few which give the reasons for their holdings. * * *

"The conclusion we have reached in the foregoing discussion is based squarely upon the ground that in cases like the present this court has no power or jurisdiction to weigh the evidence without regard to the findings of the trial court, but can only consider the evidence for the purpose of determining whether there was any substantial evidence to support such findings, and whether the conclusions reached by the lower court were clearly wrong."

We must, therefore, be governed by Garaventa v. Gardella, supra, in reviewing the record now before us.

1. Was error committed in granting the wife a divorce? The husband initially asserts that there is no substantial evidence upon which a court could find that his conduct adversely affected the health of the wife; that, absent such evidence, the ground for divorce of extreme cruelty is not established. In this connection the wife was asked: "Q. Will you state whether or not the defendant's conduct toward you has adversely

affected your health? A. Most definitely. I have had large medical bills. I still owe for my own personal bill $20, and I most definitely have."

Without setting forth all of the evidence, the following additional statement is significant. "Q. Was the defendant ever critical of you? A. He is very critical. He believes in running his life by what he reads, by what other people do, and what they write about. And now when I say this, I mean particularly in sex life. He read the Kinsey Report and told me that I was not normal because I did not come up to the specifications on page so and so that was recorded in this book. And he runs his life as the Navy runs him, by certain rules that are set down; and to me, to continually be nagged at about your sex life, and to be continually told that you are not normal because you are not doing this or that according to what he has read, I think is very nerve-wracking, and after while it becomes a complex with you. I know it certainly did with me."

We consider such evidence to be "substantial" in the light of prior opinions of this court. Marshburn v. Marshburn, 77 Nev. 206, 361 P.2d 112; Coolman v. Coolman, 76 Nev. 43, 348 P.2d 471; Leland v. Leland, 71 Nev. 346, 291 P.2d 905; Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355; Olszowy v. Olszowy, 65 Nev. 386, 197 P.2d 701. The cases of Nielsen v. Nielsen, 55 Nev. 425, 38 P.2d 663, and Miller v. Miller, 54 Nev. 44, 3 P.2d 1069, 6 P.2d 1117, 11 P.2d 1088, upon which the husband relies, do not contain the quantum of proof here presented.

The important problem presented by this claim of error is the application of the comparative rectitude statute, NRS 125.120, to the circumstances of this case. It reads: "In any action for divorce when it shall appear to the court that both husband and wife have been guilty of a wrong or wrongs which may constitute grounds for a divorce, the court shall not for this reason deny a divorce, but in its discretion may grant a divorce to the

party least in fault, if both parties seek a divorce, otherwise to the party seeking the divorce, even if such party be the party most at fault."

The relevant facts regarding comparative rectitude are well defined. During May 1959, in anticipation of divorce, the parties entered into a written separation agreement settling their property rights and providing for the custody and support of the children. They also agreed that neither should annoy, molest or interfere with the other, "nor shall either of them at any time hereafter require or by any means endeavor to compel the other to cohabit with him or her or seek to enforce any restitution of conjugal rights." Following execution of that agreement, the parties separated and have not since lived together as husband and wife. The course of conduct by the husband toward the wife, which the lower court concluded to be extreme cruelty, occurred before the separation agreement was made. The husband did not attempt to prove conduct by the wife, occurring before their separation, which would afford him cause for divorce. The deliberate adultery of the wife, which she admitted by her pleading and testimony, occurred after the separation agreement was made and when their separation was a fact, and is the conduct upon which the husband based his counterclaim for relief.

We have heretofore indicated that adultery, per se, need not be held a graver matrimonial delict than cruelty. The degree of fault in each party must be determined under the facts of the particular case. Gabler v. Gabler, 72 Nev. 325, 304 P.2d 404.[1]

[1]In Gabler v. Gabler, supra, the wife sought a divorce claiming cruelty. The husband charged adultery and asked that divorce be denied. The Supreme Court reversed a decree to the wife because the facts indicated the proof of cruelty to be scanty, whereas the wife's adultery was shown to approach a deliberate course of conduct. Therefore, the wife could not be "least in fault." The comparative rectitude statute has, since Gabler v. Gabler, supra, been amended to permit one who is most at fault to obtain a divorce if that person is the only one seeking a divorce.

The lower court, in exercising the discretion granted by statute, may well have believed the circumstances heretofore related, controlling. Perhaps it considered the term "fault," as used in the statute, to refer primarily to that fault which caused the disintegration of the marriage. If so, clearly the adultery of which the husband complained was of no significance. Their marriage was finished when the separation agreement was made. There remained only necessary judicial action to terminate the marriage contract.

Though another court might have exercised its discretion differently because of other considerations, primarily moral, we do not believe that an abuse of discretion occurred in deciding for the wife upon this issue. We conclude that, under the circumstances here present, there is substantial evidence upon which the lower court could find and conclude that the wife was the party least in fault.

2. Was error committed in granting the wife custody of the children? NRS 125.140(1) reads: "The court, in granting a divorce, shall make such disposition of, and provision for, the children, as shall appear most expedient under all the circumstances, and most for the present comfort and future well-being of such children."

Again, in determining whether the discretion of the lower court was properly exercised or abused, we must consider the circumstances of the case before us, and appropriate judicial guides. We are deeply aware of the grave responsibility placed upon a court in deciding which parent shall have the privilege of custody. Frequently, the injury visited upon children by estranged parents cannot be corrected by the judicial process. A court can only do what appears to be for their best interests under the circumstances related.

The record before the lower court dealt with the background of the parents, their relationship with the children before and after separation, their financial circumstances, the educational training of the children, the physical accommodations available for them, and the

moral environment. We shall briefly discuss the relevant facts bearing upon those matters.

The husband-father graduated from the United States Naval Academy, Annapolis, in 1947. In 1948 he married the plaintiff. At that time he held the rank of ensign. In 1950 he was promoted to lieutenant, junior grade; in 1953, to lieutenant; and in 1956, to lieutenant-commander. He is a naval architect, engaged in ship design, construction and maintenance, with the Engineering Duty Corps of the Navy. At the time of trial, he was 34 years old and had not been previously married.

The wife-mother, at that time, was 33 years old and had been previously married and divorced. She had no children by her first husband. Her second marriage was blessed with the three children who are the subject of this case.

Their marriage was not a particularly stormy one. The basic incompatibility appears to have involved their sexual relationship. Each enjoyed a happy, warm companionship with each child. Each parent was completely devoted to the children. The record is barren of evidence tending to establish that any of the children did not return a full measure of love and affection to each parent alike. The parents were active in church work and other community functions. Their neighbors did not discern anything amiss. To all appearances, the family was a normal happy unit.

In 1958 the wife met another man, 9 years her junior, later her paramour, and now her third husband. This person was also active in church work, and their mutual interests in that activity caused them frequently to be in each other's company. Following the separation in May 1959, the relationship between wife and paramour fully blossomed. In June 1959 the wife and the children (who were with her because of the provisions of the separation agreement) traveled with her new love, in his station wagon, from Maryland to Las Vegas, Nevada. During this trip, when it became necessary to stop overnight, the youngest child, a girl, would sleep with her mother in a motel. The two older children, boys, would

bed down in the station wagon with their stepfather to be. In Las Vegas a 32-foot one-bedroom trailer was purchased. They could thereafter all sleep under one roof. Upon arriving in Washoe County, housekeeping was first instituted at the Palomino Trailer Park, later at the Eastwood Trailer Court, then at the Dancing D Trailer Court, and finally at the Cedar Lodge Trailer Park. These moves covered about one year. At the time of trial, they were living in a house.

According to the record, the wife first committed adultery several weeks after arrival in Washoe County. Once initiated, that conduct continued thereafter up to and including the time of trial. She freely admitted this to be true, stating that she thought it best for "the moral standings of the children." She and her paramour held themselves out as man and wife, and were so known to many persons in the community. Each of them engaged in church work at Sparks, Nevada. Each devoted time and attention to the activities of the children, taking them on "family" picnics, to auto races, swimming and the like.

During this period of time, the husband-father hired private investigators to determine what was happening. His wife had not encouraged the children to write him. He received but one note from the oldest boy, acknowledging Christmas presents, and a Christmas card. Letters written by him and the paternal grandparents to the children didn't get into their hands, for one reason or another. It is clear that the mother attempted in every way to substitute her paramour for her husband in the daily "family" activities.

During the first four months that the wife was in Washoe County the husband did not send child support as required by their separation agreement. His explanation for such conduct was that an eastern attorney advised this action, believing that the wife might be compelled to invoke the Uniform Reciprocal Non-support Act, and thus submit herself to the jurisdiction of the marital domicile. In any event, commencing in October 1959, support payments were resumed and thereafter regularly made.

While in Nevada the paramour first obtained employ-
ment selling encyclopedias; thereafter with the Reno
Newspapers. His exact income is not disclosed. On the
other hand, the husband at the time of trial enjoyed a
gross income of $8,600 a year.

Following separation, the former family home was
sold. The husband moved, and lived with his parents
whose home is a three-story house, which has a living
room, dining room, kitchenette and family room on the
first floor, three bedrooms, bath, and sitting room on
the second floor, and two bedrooms and a half bath on
the third floor. It is located in a middle-class suburban
residential community, near churches and schools. The
paternal grandmother is 61 years old, and in good health.
She expressed her love for the grandchildren. The pater-
nal grandfather is employed as a sales manager for a
jewelry manufacturing company. All wished to have the
children live with them.

In our view, the foregoing recital discloses the essen-
tial facts upon which the custody determination was to
be made. The evidence is not in conflict regarding them.
What legal conclusions, within the area of discretion, are
to be drawn therefrom?

Before marital separation, each parent was devoted
to the children and they, in turn, to them. The children
were provided love, stability, security—both emotional
and financial, and a good, wholesome moral environment.
Though the tragedy of marital separation inevitably
casts injury upon the children, a strenuous effort must
be made to maintain, if at all possible, that love, sta-
bility, security, and moral environment which they for-
merly enjoyed. It is evident and without dispute that the
father, under the circumstances of this case, could have
provided the children with as much love, with more
security and stability, and with a more wholesome moral
environment than did the mother. The wife's conduct
following separation is despicable. The children were not
babies; they were intelligent, curious, and interested.
They undoubtedly knew right from wrong, good from
bad. The oldest son was then 9, the next 6, and the
daughter 4 years old. Though the mother professed great

love and affection for them, it became incidental to her passion for another man. Adult passions, apparently, sometimes provoke illicit togetherness. However, we cannot approve such conduct, especially its exhibition before beloved children. This is not a case where adultery is but an isolated occurrence. To the contrary, the wife-mother deliberately subjected her children to a shameful, immoral, unwholesome environment of more than a year's duration. That a more satisfactory solution was available for the children's welfare, pending divorce, is without question. We note that the father was not found unfit. Indeed, such a finding was not possible under the facts here present.

We have not found authority from any court which would support a custody award to the mother, under circumstances like these. The adultery with which we are here concerned probably did not affect the husband-wife relationship, for reasons heretofore related, but it must have caused terrible harm to the children. Authorities cited by the respondent wife to support the custody award here made, are not in point factually. One involves a single act of infidelity. Kruczek v. Kruczek, 29 N.Y.S. 2d 385. Another involves a motion to change custody following divorce, and based upon a change of circumstances. Kelien v. Kelien, 273 S.W.2d 360 (Ky. 1954). In Westlake v. Westlake, 52 Wash.2d 77, 323 P.2d 8, there was conflicting evidence on the charge that the wife committed adultery, and the trial court found for the wife on that dispute. Nor was a finding of adultery made in Pick v. Pick, 197 Ore. 74, 251 P.2d 472.

In Norman v. Norman, 27 Wash.2d 25, 176 P.2d 349, a mother who had committed adultery was given custody. However, her illicit relationship was not carried out in such manner as to subject the children to its unfortunate consequences. The same is true of Grimditch v. Grimditch, 71 Ariz. 198, 207, 225 P.2d 489, 495, where the court noted, "They [children] had not reached the age of discernment and were totally unaware of the indiscretions of the mother that had been committed more than a year and a half before the trial." In Oliver

v. Oliver, 217 Md. 222, 140 A.2d 908, the charge of adultery was denied, and the trial court found the proof thereof to be inadequate.

On the other hand, there are many cases in which the wife was found guilty of adultery, and given custody, only to be reversed on appeal. We shall cite some of them. Warnecke v. Warnecke, 28 Wash.2d 259, 182 P.2d 699; Vogel v. Vogel, 259 Wis. 373, 48 N.W.2d 501; Magarell v. Magarell, 327 Mich. 372, 41 N.W.2d 898; Christian v. Christian, 45 Wash.2d 387, 275 P.2d 422. In Maryland there appears to exist a presumption that the mother is unfit to have custody, if guilty of adultery. However, such presumption may be overcome if it appears that the best interests of the children will be served by awarding custody to the mother. Parker v. Parker, 220 Md. 69, 158 A.2d 607; Hild v. Hild, 221 Md. 349, 157 A.2d 442.

We acknowledge that one may be a bad wife, but a good mother; that adultery is many times considered, because of the particular facts involved, a most serious offense against the spouse and not as serious an offense against the children. However, such is not the case before us. Though wide discretion is given the trial court, the circumstances here present and every judicial guide we have found involving similar circumstances establish, in our view, that the court below abused its discretion in concluding that the interests of the children would best be served by awarding their custody to the mother.

Accordingly, the judgment granting plaintiff below a divorce, is affirmed. The judgment granting her custody of the children, and the support provisions incident thereto, is reversed. The defendant is granted sole custody of the three minor children, with the right to the plaintiff to visit said children at reasonable times and places. The cause is remanded for entry of judgment in accordance herewith.

BADT, C. J., and MCNAMEE, J., concur.