MICHAEL B. ADAMS, APPELLANT, *v.* CHARLENE ADELE ADAMS, RESPONDENT.

No. 5828

January 27, 1970                                    464 P.2d 458

*Lionel & Sawyer,* of Las Vegas, for Appellant.

*Jones & Jones,* of Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This appeal challenges an order of the district court that modified a divorce decree by transferring custody of a daughter, presently 6 years of age, from her father, appellant Michael B. Adams, to her mother, Charlene Adele Adams, the respondent.

The parties were divorced in July 1968, and custody of the daughter, the only child of the marriage, was awarded to the mother, who retained custody until June 1967, when Michael filed a motion to modify, asking that he be awarded custody. The district court entered a temporary custody order when Michael filed his motion, which placed the child in his custody

pending the hearing of the motion on its merits. The hearing was held in September 1967, and at its completion the district judge granted Michael's motion and awarded him custody of the child subject to a 1-day-a-week visitation by Charlene. That order of September concluded with this provision:

"IT IS FURTHER ORDERED that the matter of the custody may again be presented to the Court six months from the date hereof." In the spring of 1968, Charlene filed such a motion to regain custody, and after a hearing on her motion the district judge in June 1968 returned the child to Charlene. It is from this order that Michael has appealed to this court, seeking a reversal on the ground that the evidence offered at the June hearing failed to show that the child's welfare would be substantially enhanced by the change.

Before reviewing the record in this case, it would be well to restate the standards controlling our function on review, which are well expressed in Murphy v. Murphy, 84 Nev. 710, 711, 447 P.2d 664, 665 (1968):

"A change of custody is warranted only when: (1) the circumstances of the parents have been materially altered; and (2) the child's welfare would be substantially enhanced by the change. [Citations omitted.]"

It is true that the district judge has wide discretion in child custody cases. Cosner v. Cosner, 78 Nev. 242, 371 P.2d 278 (1962); Timney v. Timney, 76 Nev. 230, 351 P.2d 611 (1960); Black v. Black, 48 Nev. 220, 228 P. 889 (1924). That discretion, however, is to be operational within the standards announced in Murphy, supra.

The district judge found as follows:

"1.   That the defendant [Michael B. Adams] has been a fit and proper person to have the care, custody and control of the minor child of the parties and has acted as such and for the good and welfare of the minor child since the entry of the Order herein on September 26, 1967, awarding the care, custody and control of the minor child to the defendant.

"2.   That the physical and mental condition of the plaintiff [Charlene Adele Adams] has changed since the entry of the said order on September 26, 1967, and that the Court feels that the plaintiff should be given a last chance to be a fit and proper person to have the care, custody and control of the said minor child."

There was no finding by the court that "the child's welfare would be substantially enhanced by the change."

We turn now to review the record to determine whether evidence was received that would support such a finding.

Unfortunately, Charlene has had, ever since the child was born, health problems of a serious emotional nature. Since she was awarded custody of her daughter she has attempted suicide and has taken barbiturates over an extensive period of time. On one occasion the child took some of Charlene's barbiturates and as a result had to be rushed to the hospital to have her stomach pumped. It was in this sort of an environment that the child was living when Michael filed his motion seeking her custody.

At the June 1968 hearing, Dr. Ralph W. Hemington, a physician who had examined Charlene on one occasion, testified that she was in excellent health; Dr. Jerome Schwartz, a psychiatrist, testified that he had last examined Charlene in February 1968 and that he had found no evidence of mental illness.

Dr. Irving Katz, a clinical psychologist, testified that he had examined the child on numerous occasions, commencing December 20, 1967, and as late as June 1, 1968. He described the child's condition as he found it in December 1967 as compared with her condition in June 1968, and he concluded "that in terms of improvement made, that she seemed to have benefited from the stable or relatively stable relationship that existed with her step-mother, and her father, that whatever tension and instability tendency to withdraw, and tending to a clingingness had sufficiently disappeared as to indicate she made some very definite positive changes in terms of her concept and terms of security and terms of her feelings of confidence."

The court did not find, nor can we find evidence in the record that would support a finding, that the child's welfare would be substantially enhanced by the change of custody.

The district judge in his remarks from the bench at the conclusion of the June 1968 hearing, when he awarded custody to Charlene, said, in part: "The question in my mind is what is best for this child, and each of you have your own views as to what is best. Here we have your daughter [speaking to Charlene] who is four years of age who is entitled to have the love and affection that only a mother who has carried this child for nine months can give. I think you dropped your obligation and forgot your responsibility. You did this by using these barbituates [sic] or whatever you had, and certainly your conduct

has not been complimentary or laudatory at all. I think you flat goofed. I think you have been a bad mother.

"But it appears to me that you may have rediscovered that responsibility, and I believe you are entitled to have one more chance. I believe that you have changed your ways, and I believe you will probably be a very loving mother in the future.

"However, I tell you this that I want it specifically understood and in the record that should you ever revert to the use of any narcotics, should you at any time attempt suicide as you have in the past as has been testified to, that automatically without any proceedings that your former husband, the father of this child, can immediately apply for an order of this Court to change the custody of this child.

". . . [I]t appears from the testimony, that Mr. Adams, you have been rather vigilant and given your child a good home. The Court's decision is not based upon the fact you did not take care of the child. I think you have taken care of the child. . . .

"I think this woman [Charlene] is entitled to . . . one further chance and opportunity. For that reason the Court therefore awards the custody of the child to Charlene Adele Adams."

This court recently announced, in Peavey v. Peavey, 85 Nev. 571, 460 P.2d 110 (1969), the "tender years" doctrine that, absent a finding of a mother's unfitness, custody of children of tender years should be awarded to the mother. That ruling, however, is not controlling in this case, because the "tender years" doctrine was overcome at the time the court awarded the child's custody to the father, Michael. Thereafter, the modification order of June 1968 and any subsequent modification orders affecting the child's custody must be governed by the standards of Murphy, supra.

We appreciate that for the past 18 months the daughter has been in the custody of Charlene and that repetitive custody changes do not contribute to the security or emotional stability of a child. We reverse the order of the district court, and we remand the case with instructions to conduct as soon as possible a full custody hearing within the standards announced in Murphy, supra. Pending the disposition of that hearing, the custody of the child may remain with Charlene.

Reversed and remanded with instructions.

COLLINS, C. J., ZENOFF, BATJER, and THOMPSON, JJ., concur.