DEBORAH JEAN LANTIS, Appellant, v. EDWARD DAVID LANTIS, Respondent.

No. 6166

December 21, 1970                                    478 P.2d 163

886

*Leonard T. Howard, Sr.,* of Reno, for Appellant.

*Nada Novakovich,* of Reno, for Respondent.

**OPINION**

By the Court, COLLINS, C. J.:

This is an appeal from an order modifying a decree of divorce changing custody of an infant female child from the mother to the father. We affirm the order of modification.

Deborah and Edward Lantis were married July 28, 1967, in Reno, Nevada. A female child, Stacey Ann, was born to them. Marital difficulties ensued, and on October 3, 1969, they were divorced. They entered into a property settlement and child custody agreement which was submitted to and approved by the court. Pursuant to their agreement, custody of the child was granted to Deborah with right of visitation reserved to Edward. Edward was to pay $100 per month child support.

Shortly prior to the divorce, Deborah met another man by the name of Mario Nuno. Immediately subsequent to the divorce Deborah and Mario commenced living together in the home of a friend without benefit of marriage. The child was with them. That arrangement continued for one week when Deborah and Mario decided to go to San Diego, California, where, it appears, they planned to be married and establish a home. Deborah attempted to have her friend care for the infant child for a period of approximately six weeks. The friend refused. Deborah then contacted Edward, told him she was going to California with a "girl friend" and asked him to care for Stacey while she was gone. Edward agreed, and arranged for the baby to be cared for while he worked. Other than those hours, he took entire care of the child. During this

time, the child was also undergoing surgical treatment for a moderately deformed foot, and it was agreed by both Edward and Deborah that the child should remain in Reno under the care of the attending surgeon.

While Deborah was in California, Edward learned she had gone not with a girl friend but with Mario and was cohabiting with him. Edward obtained a temporary restraining order prohibiting Deborah from removing the child from his custody and filed a motion to modify the decree of divorce revoking the award of Stacey's custody to Deborah and granting it to him. Deborah, without having married Mario and breaking off her relationship with him, returned from California and opposed the motion.

The trial judge, after receiving extensive evidence from both sides, found Edward a fit person to have custody of the child, made no express finding about Deborah's fitness, determined a change of custody was in the best interest of the child, and granted custody to Edward with liberal visitation rights reserved to Deborah. From that order, Deborah appeals. We affirm the order.

Deborah contends the lower court erred in that there was no substantial change of circumstances, she was not found unsuitable, and that the court abused its discretion. She relies principally upon the decisions of this court in Peavey v. Peavey, 85 Nev. 571, 460 P.2d 110 (1969), the tender years case, and Cooley v. Cooley, 86 Nev. 220, 467 P.2d 103 (1970), the fitness of the mother case.

The issue before us in this case is this:

I. In a child custody modification application, must the mother be found unfit before she can be deprived of the custody of an infant child previously awarded to her?

1. We do not believe that the tender years doctrine of Peavey v. Peavey, supra, applies in the posture of this case. That doctrine had already operated when Deborah was awarded custody of Stacey in the original decree. Nor do we believe that the rule of Cooley v. Cooley, supra, controls the action of the lower court in this case. In *Cooley,* the mother was granted custody of minor children in the original divorce proceeding even though she admitted an adulterous relationship with another man which the lower court specifically found "[did] not make her a bad mother or render her unfit to have custody of these minor children." The husband contended, as a matter of law, the lower court abused its discretion in awarding their custody to her, relying upon Sisson v. Sisson, 77 Nev. 478, 367 P.2d 98 (1961). This court upheld the

lower court in *Cooley,* overruled the contrary views of *Sisson,* and now permits award of the custody of children in the original divorce proceeding to an adulterous parent if other factors outweigh that marital misconduct.

2. We believe the issue in this case is controlled by the rule announced in Murphy v. Murphy, 84 Nev. 710, 447 P.2d 664 (1968), and Harris v. Harris, 84 Nev. 294, 439 P.2d 673 (1968). In *Murphy,* it was held in a situation similar to that presented here, where an initial award of custody was sought to be changed, "A change of custody is warranted only when: (1) the circumstances of the parents have materially altered; and (2) the child's welfare would be substantially enhanced by the change (citing cases)."

Reference to the trial judge's oral comments, findings and conclusions are helpful and enlightening as to his reasoning process in granting the custody change. The judge said, . . . "I think the big issue that confronts us here is not so much is not whether Debbie Lantis is fit and proper and a decent person and so forth, but rather whether she is mature enough and responsible enough to undertake all of the duties of the mother and take care of this little girl. Frankly that's the way I see it, and this is what makes it hard. . . . I don't think Debbie is a terrible person by any means. I don't approve of some of her conduct. I'm old-fashioned, too, and I don't approve of it for one minute. The conduct itself doesn't necessarily in my opinion make her unfit, unsuitable, or anything else, but it does indicate something to me, and it indicates a lack of responsibility toward this little girl. . . . I'm not here to dictate morals to anybody. What I'm saying is that her conduct is indicative of something that is lacking in maturity and responsibility on her part. I don't think that she is, . . . As between the two parents, I feel that Mr. Lantis has demonstrated that he has more responsibility, more suitable, that it's in the best interest of the little girl to stay with him, and that Debbie is going to have to prove something in the way of responsibility, and when she does maybe the custody will go back. . . . Legal custody means that the person in whom the custody is placed is the one who has the right to say where the child lives, what it does from day to day, and so forth, within the confines of any order that the court makes. My order in this case is that the custody shall be transferred to the father, that the mother shall have not just reasonable rights of visitation, but have liberal rights of visitation, and I don't know; there is nothing more I can say except that hopefully the things work out the best for all of you and particularly for that little girl."

Clearly, these findings uphold a material alteration in the parents' circumstances and demonstrate that the court was deeply concerned about the best interests of the child.

In Harris v. Harris, supra, there was a comparable lack of finding one way or the other as to the fitness of the mother, but an award of custody to the father was affirmed and it was held, "Since the record may be read to affirm the express finding that the father was fit to have custody, and that the best interest of the child would be served by placing her in his care [a female child the same as here], we will affirm the court's exercise of discretion. . . ." Id. at 295. Here there was an express finding of fitness of the father, deeply explored concern for the welfare and best interest of the child, and the absence of a specific finding one way or the other concerning the mother.

The lower court's exercise of discretion was well within the limits of the law of this state. See McGlone v. McGlone, 86 Nev. 14, 464 P.2d 27 (1970); Adams v. Adams, 86 Nev. 62, 464 P.2d 458 (1970).

Judgment affirmed.

ZENOFF, BATJER, MOWBRAY, and THOMPSON, JJ., concur.