*883
 
 OPINION
 

 By the Court,
 

 Agosti, J.:
 

 Appellant Richard Reel appeals from the district court order permitting his ex-wife, Kathryn Harrison, to remove their minor child from the state, pursuant to NRS 125C.200. The district court determined that NRS 125C.200 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution by restricting a custodial parent’s fundamental right to travel. The district court also concluded that even if NRS 125C.200 is constitutional, Harrison was still permitted to relocate the minor child to New Jersey, based on the career and educational opportunities available there, the presence of the child’s extended family in New Jersey and the ability to maintain reasonable visitation with Reel, the child’s father. We conclude that NRS 125C.200 does not violate the United States Constitution and that the district court did not abuse its discretion in granting the petition to relocate.
 

 Richard Reel and Kathryn Harrison were divorced in October 1990. The court awarded Harrison primary physical custody of the parties’ minor child. Reel was granted reasonable rights of visitation, which the parties have historically worked out in an amicable fashion. Generally, Reel sees the child two days each week, and occasionally for longer periods during the summer.
 

 On April 20, 2000, Harrison filed a petition under NRS 125C.200 to remove the child from the state and to modify the divorce decree. Reel opposed the petition, and a hearing was held. At the hearing, Harrison testified that while she earned $19,000.00 in 1999 as a craps dealer in Carson City, she could earn at least $35,000.00 in New Jersey, working for her sister and brother-in-law’s company as a sales and marketing administrator, also potentially qualifying for bonuses and even possibly acquiring a future equity share in the company. Harrison lived in a 900-square-foot trailer in Carson City,
 
 [1]
 
 but if she and the child moved to New Jersey, they would initially live with her sister and brother-in-law in their 3,000-square-foot, four-bedroom house in Matawyn, New Jersey. Harrison intended eventually to rent a home in one of the many developments in Matawyn. Harrison also planned to enroll the child in the Ravine Road School, which is dedicated to gifted and talented students. Harrison testified that
 
 *884
 
 the child would qualify for the school on the basis of her IQ score of 130. Harrison also testified that the Ravine Road School was superior to any of the gifted and talented programs offered by the Carson City school system. Finally, Harrison stated that the child’s aunt, uncle and several cousins live in and around New Jersey. Because Harrison and the child have no relatives living in Carson City, Harrison thought that it was important for the child to bond with her family. Harrison also noted that the availability of many cultural activities in New York City factored into her decision.
 

 Reel testified that the career change was a good opportunity for Harrison and that he had no reason to believe that Harrison’s motives for moving to New Jersey were to frustrate or interfere with his visitation rights. However, Reel objected because he believed that removing the child from the stability of regular visitation with him was not in the child’s best interest. Reel testified that he and the child were very close; he proposed that the child live with him for a year while Harrison became situated and comfortable in New Jersey. After one year, Reel proposed that the parties re-evaluate the situation to ensure that the proposed move satisfies the child’s best interest. Harrison, in contrast, proposed a visitation schedule wherein Reel would have visitation for eight consecutive weeks during the summer, during which time the child support payments would be suspended, one week at Christmas and one week during the child’s spring break from school. Additionally, Harrison offered to pay one-half of the child’s travel costs to Nevada or of Reel’s travel costs to New Jersey whenever he wanted to visit.
 

 After listening to the evidence, the district court concluded that NRS 125C.200 violated the Equal Protection Clause of the Fourteenth Amendment.
 
 [2]
 
 The district court premised its finding on the United States Supreme Court’s holding in
 
 Saenz v. Roe.
 

 [3]
 

 The district court stated:
 

 If Mr. Reel had the opportunity to move to Atlantic City to advance to a much higher gaming position than he has right now, there is nothing in this set of laws that are on these books or in these cases that have been decided by the Nevada Supreme Court which would allow Ms. Harrison to come to this Court and prevent him from moving.
 

 By the same token there [are] the laws on the books in NRS 125C.200 which suggests that unless she gets his permission and she is the physical custodial parent that she is not going to be allowed to move or unless she has the Court’s
 
 *885
 
 permission on this matter and if she doesn’t do either of those two things it is to be held against her.
 

 The district court then found that NRS 125C.200 implicitly restricts a custodial parent’s fundamental right to travel. Applying the strict scrutiny standard in reviewing the statute’s constitutionality, the district court found that no compelling state interest was satisfied by the restriction. Therefore, the district court concluded that Harrison did not need the court’s permission to move to New Jersey with the child. Notwithstanding its legal conclusion concerning NRS 125C.200’s constitutionality, the district court also found that Harrison would have met her burden for moving the child out-of-state under the factors set forth in
 
 Schwartz
 
 v. Schwartz
 
 [4]
 
 because of the New Jersey career opportunities for Harrison, the New Jersey educational opportunities for the child and the opportunity to be near extended family in the East and because Reel would still have access to reasonable visitation with the child.
 

 In examining NRS 125C.200, we perceive no constitutional defect.
 
 [5]
 
 The district court determined that NRS 125C.200 implicitly restricts a citizen’s right to travel, as it imposes a penalty on the exercise of the custodial parent’s right to relocate. Because the noncustodial parent does not have to petition the district court to relocate from Nevada, the district court determined that NRS 125C.200 violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Further, the district court concluded that Nevada’s interest in fostering the continued involvement of both parents with their children and in encouraging parents to share rights and responsibilities of child rearing
 
 [6]
 
 is not a compelling governmental interest which is required to survive the strict scrutiny with which we judge a statute when a fundamental right is implicated.
 

 The right to travel encompasses three components, protecting
 

 the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to
 
 *886
 
 become permanent residents, the right to be treated like other citizens of that State.
 
 [7]
 

 Although
 
 Saenz
 
 addresses the third component, the district court concluded that NRS 125C.200 violates the first component of the right to travel, namely, the right of a citizen of one state to enter and to leave another state.
 

 The United States Supreme Court has held that “a classification that ha[s] the effect of imposing a penalty on the exercise of the right to travel violate[s] the Equal Protection Clause ‘unless shown to be necessary to promote a
 
 compelling
 
 governmental interest.’ ’ ’
 
 [8]
 
 It is this language that the district court quoted in concluding that NRS 125C.200 violates the Equal Protection Clause by treating custodial parents differently from noncustodial parents. Equal protection requires that “no class of persons shall be denied the same protection of the law which is enjoyed by other classes in like circumstances.”
 
 [9]
 
 However, we have recognized that a supportable classification between individuals is not unconstitutional
 
 [10]
 
 so long as ‘“all persons similarly situated [are] treated alike.’ ”
 
 [11]
 

 NRS 125C.200 requires a custodial parent seeking to relocate from Nevada with the child to obtain the written consent of the noncustodial parent. If the noncustodial parent refuses to consent, the custodial parent must petition the court for permission to move the child. The purpose of the statute is “to preserve the rights and familial relationship of the noncustodial parent with respect to his or her child.”
 
 [12]
 
 We conclude that the district court erroneously engaged in an equal protection analysis since custodial and noncustodial parents are not similarly situated.
 

 We have stated that when analyzing a petition to relocate, a court must balance “ ‘the custodial parent’s interest in freedom of movement
 
 as qualified by his or her custodial obligation,
 
 the State’s interest in protecting the best interests of the child, and the
 
 *887
 
 competing interests of the noncustodial parent.’”
 
 [13]
 
 A custodial parent’s freedom of movement is qualified to the extent that moving the child from Nevada may adversely affect the noncustodial parent’s visitation rights or might otherwise not be in the child’s best interest.
 
 [14]
 
 Obviously, the responsibilities and obligations of custodial and noncustodial parents are so different that the parties cannot be considered similarly situated.
 
 [15]
 

 Because we hold that NRS 125C.200 does not implicate the Equal Protection Clause,
 
 [16]
 
 we now evaluate whether the district court abused its discretion by permitting Harrison to move with the minor child based upon the factors set forth in Schwartz.
 
 [17]
 
 The district court has wide discretion in determining what is in a child’s best interest, and we will not disturb the judgment absent an abuse of discretion.
 
 [18]
 

 In
 
 Schwartz,
 
 this court articulated guidelines for the removal of a child from the state. Custodial parents must first satisfy the threshold criteria that (1) moving will create a real advantage for both the children and the custodial parent,
 
 [19]
 
 and (2) the custodial parent has “ ‘a sensible good faith reason for the move.’ ”
 
 [20]
 
 In addition to economic factors, the court should consider non-economic factors, such as those “likely to contribute to the well-
 
 *888
 
 being and general happiness of the custodial parent and children.”
 
 [21]
 

 Once the custodial parent has satisfied the threshold requirement, the court must weigh the following factors:
 

 (1) the extent to which the move is likely to improve the quality of life for both the children and the custodial parent; (2) whether the custodial parent’s motives are honorable, and not designed to frustrate or defeat visitation rights accorded to the noncustodial parent; (3) whether, if permission to remove is granted, the custodial parent will comply with any substitute visitation orders issued by the court; (4) whether the noncustodian’s motives are honorable in resisting the motion for permission to remove, or to what extent, if any, the opposition is intended to secure a financial advantage in the form of ongoing support obligations or otherwise; (5) whether, if removal is allowed, there will be a realistic opportunity for the noncustodial parent to maintain a visitation schedule that will adequately foster and preserve the parental relationship with the noncustodial parent.
 
 [22]
 

 In weighing the above factors, the court must also consider a non-exhaustive list of sub-factors, such as:
 

 (1) whether positive family care and support, including that of the extended family, will be enhanced; (2) whether housing and environmental living conditions will be improved;
 

 (3) whether educational advantages for the children will result; (4) whether the custodial parent’s employment and income will improve; (5) whether special needs of a child, medical or otherwise, will be better served; and (6) whether, in the child’s opinion, circumstances and relationships will be improved.
 
 [23]
 

 After carefully considering the above factors, the district court concluded that Harrison would have met her burden because of the career opportunities for Harrison, the educational opportunities for the child, the opportunity to be near extended family and Harrison’s good faith reasons for the move, and because Reel would still have access to reasonable visitation. Because substantial evidence in the record supports the district court’s findings, we conclude that the district court did not abuse its discretion in
 
 *889
 
 permitting Harrison to remove the child from Nevada.
 
 [24]
 
 Accordingly, we affirm the district court’s order.
 

 Young, C. J., Maupin, Shearing, Rose, Leavitt and Becker, JJ., concur.
 

 [1]
 

 The record does not indicate if Harrison and the child have, in fact, moved to New Jersey. However, her job opportunity was to begin in May or June 2000, and the district court’s order was not stayed.
 

 [2]
 

 U.S. Const. amend. XIV, § 1.
 

 [3]
 

 526 U.S. 489 (1999).
 

 [4]
 

 107 Nev. 378, 812 P.2d 1268 (1991).
 

 [5]
 

 Initially, Harrison argues that Reel’s appeal is moot because Reel sought custody of the child for a one-year period of time during Harrison’s relocation to New Jersey. Since more than one year has passed from the time of Reel’s proposal, Harrison argues that the appeal should be dismissed as moot. We conclude this argument is without merit.
 

 [6]
 

 See
 
 NRS 125.460.
 

 [7]
 

 Saenz,
 
 526 U.S. at 500.
 

 [8]
 

 Id.
 
 at 499 (quoting
 
 Shapiro v. Thompson,
 
 394 U.S. 618, 634 (1969)).
 

 [9]
 

 Allen v. State, Pub. Emp. Ret. Bd.,
 
 100 Nev. 130, 135, 676 P.2d 792, 795 (1984).
 

 [10]
 

 See Redmen
 
 v.
 
 State,
 
 108 Nev. 227, 236, 828 P.2d 395, 401 (1992) (stating that “ [distinctions between classes are constitutionally improper if the basic distinction between the classes is insupportable”),
 
 overruled on other grounds by Alford v. State,
 
 111 Nev. 1409, 1415 n.4, 906 P.2d 714, 718 n.4 (1995).
 

 [11]
 

 DeRosa
 
 v.
 
 Dist. Ct.,
 
 115 Nev. 225, 235, 985 P.2d 157, 164 (1999) (quoting
 
 Cleburne
 
 v.
 
 Cleburne Living Center, Inc.,
 
 473 U.S. 432, 439 (1985)).
 

 [12]
 

 Schwartz,
 
 107 Nev. at 381-82, 812 P.2d at 1270.
 

 [13]
 

 Id.
 
 at 382, 812 P.2d at 1270 (quoting
 
 Holder v. Polanski,
 
 544 A.2d 852, 855 (N.J. 1988)) (emphasis added).
 

 [14]
 

 Holder,
 
 544 A.2d at 856.
 

 [15]
 

 Other jurisdictions have concluded likewise when discussing child support obligations.
 
 See Coghill v. Coghill,
 
 836 P.2d 921, 929 (Alaska 1992) (stating that “the custodial and noncustodial parents are clearly not similarly situated for the purposes of child support”);
 
 see also Boris v. Blaisdell,
 
 492 N.E.2d 622, 630 (Ill. App. 1986) (providing “custodial and noncustodial parents are not ‘similarly situated’ since, after divorce, the custodial parent’s responsibility for the child’s support as well as care is general and plenary, while the noncustodial parent’s responsibility is usually limited to the requirements of the support order”).
 

 [16]
 

 Because we hold that custodial and noncustodial parents are not similarly situated, we need not engage further in an equal protection analysis. “This court will not consider constitutional issues which are not necessary to the determination of an appeal.”
 
 Spears
 
 v.
 
 Spears,
 
 95 Nev. 416, 418, 596 P.2d 210, 212 (1979).
 

 [17]
 

 107 Nev. 378, 812 P.2d 1268.
 

 [18]
 

 See Adams v. Adams,
 
 86 Nev. 62, 64, 464 P.2d 458, 459 (1970) (citing
 
 Cosner
 
 v.
 
 Cosner,
 
 78 Nev. 242, 371 P.2d 278 (1962);
 
 Timney
 
 v.
 
 Timney,
 
 76 Nev. 230, 351 P.2d 611 (1960);
 
 Black
 
 v.
 
 Black,
 
 48 Nev. 220, 228 P. 889 (1924)).
 

 [19]
 

 Schwartz,
 
 107 Nev. at 382, 812 P.2d at 1271.
 

 [20]
 

 Jones
 
 v.
 
 Jones,
 
 110 Nev. 1253, 1261, 885 P.2d 563, 569 (1994) (quoting
 
 Cooper v. Cooper,
 
 491 A.2d 607, 613 (N.J. 1984),
 
 modified by Holder,
 
 544 A.2d 852).
 

 [21]
 

 Id.
 
 at 1260, 885 P.2d at 568.
 

 [22]
 

 Schwartz,
 
 107 Nev. at 383, 812 P.2d at 1271.
 

 [23]
 

 Id.
 

 [24]
 

 Reel also argues that Harrison violated FJDCR 19(4) because she never served him with a copy of a proposed district court order and because the order allegedly contained conclusions beyond those which the district court stated at the hearing. Because it appears that the district court prepared its own order, it is not clear that FJDCR 19(4) even applies. Regardless, Reel was not prejudiced by any potential violation of FJDCR 19.