960 So.2d 52 (2007)
Leslie Ann FREDMAN, n/k/a Leslie Ann Melton, Appellant,
v.
David Lynn FREDMAN, Appellee.
No. 2D06-1674.
District Court of Appeal of Florida, Second District.
June 20, 2007.
*53 Allison M. Perry of Law Office of Allison M. Perry, P.A., Tampa, for Appellant.
Robert M. Geller of Law Offices of Robert M. Geller and Associates, Tampa, for Appellee.
SILBERMAN, Judge.
In this post dissolution proceeding, Leslie Ann Fredman, n/k/a Leslie Ann Melton (the Mother), appeals a final order denying her supplemental petition and prohibiting her from relocating with the parties' two children to Texas. She contends that section 61.13(2)(d), Florida Statutes (2004), the parental relocation statute,[1] is unconstitutional because it abridges her fundamental rights to privacy and travel and violates her right to equal protection of the law. She also contends that the trial court abused its discretion in denying her request to relocate to Texas. We affirm, holding that the statute is constitutional on its face and that the trial court did not abuse its discretion in denying her request to relocate.
The Mother and David Lynn Fredman (the Father) have two sons, born December 21, 1994, and December 22, 1997. The parties divorced in October of 2002, and the final judgment of dissolution of marriage incorporated the parties' marital settlement agreement (MSA). The parties have shared parental responsibility, with the Mother being the primary residential parent and the Father having liberal visitation, specifically including a minimum of one night per week and every other weekend. The MSA and the final judgment do not contain a restriction on the Mother's relocation with the children. At the time the parties entered into the MSA and provided *54 for the specific visitation, the Mother had a relationship with Mike Melton, whom she later married.
The Mother and Mr. Melton met while he was working on a project in Florida for an extended time. Mr. Melton lives in Ponder, Texas, with his son, and he now works in Ponder. The Mother works in Hillsborough County, Florida, and lives with the parties' two sons in a two-bedroom apartment in Brandon, Florida. On January 23, 2004, the Mother filed a supplemental petition seeking to modify the Father's visitation because she would be marrying Mr. Melton and relocating with the children to Mr. Melton's home in Ponder, Texas. Upon the Father's motion for injunctive relief, the court entered a temporary injunction prohibiting the Mother from moving the children to Texas.
At the final hearing in November 2004, the Mother testified to the benefits of moving the children to the small community of Ponder, Texas, particularly Mr. Melton's new 3000-square-foot home and the amenities at the nearby public school. The Mother testified that she earns $58,000 per year and has the possibility for advancement at her current Florida employment. The Mother testified that she planned to be a stay-at-home mom in Ponder, but if necessary she could find comparable employment there. The only people her children know in Ponder are Mr. Melton and his son. The Mother has no family in Ponder; her family lives in Oklahoma, two and one-half hours away from Ponder.
Mr. Melton testified that he worked in the oil and gas industry as a right-of-way agent, that he earned $70,000 to $90,000 per year, and that he could not find employment in his field of work in Florida.
The Father testified that he works a night shift from 11:00 p.m. to 7:30 a.m., that he exercised visitation with his children on Tuesdays and every other weekend, and that when he did not exercise visitation it was due to his work schedule. Since the Mother filed the supplemental petition, he has increased the overnight visitation because his new wife is home while he is working at night. The Father picks the children up from school on the days he has visitation. He testified that he helps them with their homework and that he enjoys recreational activities with his sons, including bowling and fishing.
The Father has extended family in Hillsborough County, including his mother, grandmother, uncles, aunts, and cousins. The Father testified that the children have seen their grandmother at least once a week throughout their lives. The Father sees his family every weekend, and the children have frequent contact with them, enjoying "boating, fishing, swimming, and just hanging out as a family" at their grandmother's home. The Father's family is also involved in a bowling league in which the children and the Father participate, so that the children spend time with the Father and his family on Tuesday nights. Furthermore, the Father testified that both the Father and the Mother attend the children's bowling league on Saturdays.
On December 10, 2004, after a final hearing, the trial court rendered an order applying the factors in section 61.13(2)(d) regarding relocation and denying the Mother's request for modification of visitation. On appeal, this court reversed and remanded for the trial court to use the proper legal standard set forth in section 61.13(2)(d)(4) regarding the proposed substitute visitation for the Father. See Fredman v. Fredman, 917 So.2d 1038 (Fla. 2d DCA 2006). On remand, the trial court reconsidered that factor, and in an order rendered March 24, 2006, found that the proposed visitation plan was "adequate to foster a continuing, meaningful relationship *55 between the children and the Father" but found, considering all the factors, that the move was not in the children's best interest. Thus, the trial court denied the Mother's supplemental petition and her request to relocate. The Mother now appeals from the trial court's March 2006 order.

I. CONSTITUTIONALITY OF RELOCATION STATUTE
Although the Mother did not raise the constitutionality of the relocation statute in the trial court, she challenges the facial constitutionality of the statute on the ground that application of the allegedly unconstitutional statute constitutes fundamental error which she can raise for the first time on appeal. See State v. Johnson, 616 So.2d 1, 3 (Fla.1993) ("A facial challenge to a statute's constitutional validity may be raised for the first time on appeal only if the error is fundamental."); B.C. v. Dep't of Children & Families, 864 So.2d 486, 491 (Fla. 5th DCA 2004) (recognizing that the facial unconstitutionality of a statute may be raised for the first time on appeal but that the unconstitutional application of a statute to a particular set of facts may not be raised for the first time on appeal). The constitutionality of the relocation statute appears to be a question of first impression in the State of Florida. We emphasize, however, that this opinion does not address the significantly amended version of the relocation statute in section 61.13001 but applies only to the version of the statute in section 61.13(2)(d).
Section 61.13(2)(d) provides as follows:
No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to remove the child and the move will materially affect the current schedule of contact and access with the secondary residential parent. In making a determination as to whether the primary residential parent may relocate with a child, the court must consider the following factors:
1. Whether the move would be likely to improve the general quality of life for both the residential parent and the child.
2. The extent to which visitation rights have been allowed and exercised.
3. Whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent.
5. Whether the cost of transportation is financially affordable by one or both parties.
6. Whether the move is in the best interests of the child.
The constitutionality of a statute is reviewed de novo; however, a legislative enactment comes to the reviewing court with a presumption of constitutionality, and the reviewing court should, if possible, construe a statute in a manner resulting in a constitutional outcome. Fla. Dep't of Revenue v. City of Gainesville, 918 So.2d 250, 256 (Fla.2005).
When the legislature enacted section 61.13(2)(d), Florida Statutes, in 1997, it provided, "No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent." See Ch. 97-242, § 1, at 4436, Laws of Fla. That provision effectively overruled the Florida Supreme Court's decisions in Mize v. Mize, 621 So.2d 417 *56 (Fla.1993), and Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996), which provided that when a primary residential parent is seeking in good faith to relocate, there is a rebuttable presumption in favor of the request to relocate. See Russenberger, 669 So.2d at 1047. The Mother contends that this standard was one of constitutional dimension and that by removing the presumption in favor of relocation, the relocation statute "is a clear violation of numerous constitutionally protected rights." Specifically, the Mother raises the right to privacy, the right to travel, and equal protection.

Right to Privacy
The mother contends that the relocation statute violates a primary residential parent's right to privacy because it empowers the State to dictate where the primary residential parent may or may not live. See Art. I, § 23, Fla. Const. (providing "the right to be let alone and free from governmental intrusion into the person's private life except as otherwise provided herein"); Von Eiff v. Azicri, 720 So.2d 510 (Fla.1998) (recognizing parent's fundamental right to privacy in childrearing decisions and holding grandparent visitation statute unconstitutional). The argument regarding her fundamental right to privacy seems to be very similar to her argument regarding her fundamental right to travel because the privacy argument is based on her right to choose where she lives. Thus, the discussion on her right to travel will encompass her right to choose where she lives.
To the extent that the mother is arguing that she has a fundamental right as a parent to decide where her children live, she must recognize that the father shares the same fundamental right. The Von Eiff court stated that when a governmental regulation implicates a privacy interest, the State must establish "that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means." 720 So.2d at 514 (quoting Winfield v. Div. of Pari-Mutuel Wagering, Dept. of Bus. Regulation, 477 So.2d 544, 547 (Fla.1985)). In Winfield, however, the supreme court explained that "before the right of privacy is attached and the delineated standard applied, a reasonable expectation of privacy must exist." 477 So.2d at 547. In City of North Miami v. Kurtz, 653 So.2d 1025, 1028 (Fla.1995), the court stated that the Florida right to privacy "is circumscribed and limited by the circumstances in which it is asserted." The court determined that an applicant for a government job did not have a reasonable expectation of privacy in the disclosure on a job application of whether she was a smoker. Id. The court therefore determined that the circumstances did not implicate Florida's right of privacy. Id.
Unlike Von Eiff, where a parent asserted his privacy right regarding childrearing decisions against third parties (the grandparents), here, the Mother asserts her right to make childrearing decisions against the Father. The final judgment of dissolution of marriage provides that the parties have shared parental responsibility as to the children and that the Mother is the primary residential parent. As primary residential parent, the Mother does not make all childrearing decisions. Rather, section 61.046(15) defines "shared parental responsibility" as "a court-ordered relationship in which both parents retain full parental rights and responsibilities with respect to their child and in which both parents confer with each other so that major decisions affecting the welfare of the child will be determined jointly." It is obvious that what school a child attends and in what state a child lives are major decisions affecting the child's welfare.
*57 Therefore, when the parties agree to shared parental responsibility in the marital settlement agreement and a court order provides for shared parental responsibility, we conclude that the Mother does not have a reasonable expectation of privacy to decide in what state her children live, with respect to the Father, although she would have a reasonable expectation of privacy as to a third party. Thus, in this particular circumstance, the Mother's right to privacy is not implicated.

Right to Travel
The Mother contends that the relocation statute violates her fundamental right to travel by requiring her to obtain court permission to relocate to another state. The United States Supreme Court has "long `recognized that the nature of our Federal Union and our constitutional concepts of personal liberty unite to require that all citizens be free to travel throughout the length and breadth of our land uninhibited by statutes, rules, or regulations which unreasonably burden or restrict this movement.'" Saenz v. Roe, 526 U.S. 489, 499, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999) (quoting Shapiro v. Thompson, 394 U.S. 618, 629, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), overruled in part on other grounds by Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)); see also State v. J.P., 907 So.2d 1101, 1112 (Fla.2004) ("The freedom to travel throughout the United States and the freedom of movement have been recognized as basic rights under the federal Constitution.")
Here, the relocation statute does not prevent the Mother from relocating to another state, but it does restrict her in moving with the parties' children to another state. In Shapiro, the Court recognized that "[i]f a law has `no other purpose * * * than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it (is) patently unconstitutional.'" 394 U.S. at 631, 89 S.Ct. 1322 (quoting United States v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968)). In applying this concept to a relocation case, the New Mexico Supreme Court stated that "it makes no difference that the parent who wishes to relocate is not prohibited outright from doing so; a legal rule that operates to chill the exercise of the right, absent a sufficient state interest to do so, is as impermissible as one that bans exercise of the right altogether." Jaramillo v. Jaramillo, 113 N.M. 57, 823 P.2d 299, 306 (1991) (citing Shapiro, 394 U.S. at 631, 89 S.Ct. 1322). In In re Marriage of Ciesluk, 113 P.3d 135, 142 (Colo.2005), the Colorado Supreme Court, citing Jaramillo and Shapiro, determined that although the Colorado statute at issue "does not prohibit outright a majority time parent from relocating, it chills the exercise of that parent's right to travel because, in seeking to relocate, that parent risks losing majority parent status with respect to the minor child."
The Colorado Supreme Court in Ciesluk discussed the competing interests involved in a relocation by the "majority time parent" and the different approaches courts have taken on the subject. There, an amendment to a Colorado statute replaced a case law "presumption in favor of the majority time parent with a liberal fact-driven analysis." Id. at 141. Like the present case, the mother in Ciesluk argued that by removing the presumption in favor of relocation, the amended statute "discourages her from relocating, and unconstitutionally infringes upon her right to travel." Id. at 142.
Ciesluk recognized, however, that it is not only the relocating parent's fundamental right to travel that is at stake. "In addition, a minority time parent has an *58 equally important constitutional right to the care and control of the child." Id. (citing Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (reiterating the fundamental liberty interest that parents have "in the care, custody, and control of their children")). Furthermore, intertwined with the parents' competing rights is the concern for the best interests of the child. Ciesluk, 113 P.3d at 142. "Thus, relocation disputes present courts with a unique challenge: to promote the best interest of the child while affording protection equally between a majority time parent's right to travel and a minority time parent's right to parent." Id.
The Ciesluk court considered and rejected the approach by the Wyoming Supreme Court in Watt v. Watt, 971 P.2d 608 (Wyo. 1999), that a custodial parent's right to travel and to relocate the children is not to be denied unless there is a substantial and material change in circumstances and unless detriment to the child can be shown. Ciesluk, 113 P.3d at 143. We agree that this approach fails to take into consideration the other parent's fundamental right to parent, and the Florida relocation statute's fact-driven approach balances all interests, including the best interests of the child.
The Ciesluk court also considered and rejected the approach by the Minnesota court in LaChapelle v. Mitten, 607 N.W.2d 151 (Minn.Ct.App.2000), which determined that the deprivation of the right to travel was justified by a compelling state interest: the best interests of the child. Ciesluk, 113 P.3d at 144-45. Although this approach has some appeal because the best interests of the child generally is a paramount concern, the Florida Supreme Court has held, albeit in a different context, that the best interests of the child is not a compelling state interest. In Von Eiff, the supreme court held a grandparent visitation statute unconstitutional. 720 So.2d at 517. The court determined that the statute infringed on the parents' right to privacy, which includes the right to make childrearing decisions. Id. at 513-14. To justify an intrusion on the right to privacy, the State had to demonstrate "that the challenged regulation serves a compelling state interest and accomplishes its goal through the use of the least intrusive means." Id. at 514 (quoting Winfield, 477 So.2d at 547). The court determined that the best interests of the child was not a compelling state interest; rather, "`the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm.'" Id. (citation omitted). The Von Eiff court noted that it did not intend to disrupt the best interest standard in other areas of family law. Id. at 514 n. 3.
Of course, Von Eiff is factually distinguishable in that the father and adoptive mother's right to raise their child was pitted against the desire for visitation by third parties, the maternal grandparents. Here, the Mother and the Father have competing rights. The Colorado court in Ciesluk placed much emphasis on these competing rights, along with the State's concern for the best interests of the child, and chose to adopt the New Mexico Supreme Court's approach in Jaramillo. 113 P.3d at 146.
The Jaramillo court determined that in a joint custody situation, a parent wishing to relocate should not be burdened by an adverse presumption. 823 P.2d at 305. It also determined that the resisting parent should not be burdened with a presumption in the relocating parent's favor, because the resisting parent has a fundamental liberty interest in parenting. Id. at 306. Instead, the court concluded that

*59 neither parent will have the burden to show that relocation of the child with the removing parent will be in or contrary to the child's best interests. Each party will have the burden to persuade the court that the new custody arrangement or parenting plan proposed by him or her should be adopted by the court, but that party's failure to carry this burden will only mean that the court remains free to adopt the arrangement or plan that it determines best promotes the child's interests.
Id. at 309.
The Ciesluk court determined that in applying the Colorado statute, a court is not to make a presumption in favor of or against relocation and that neither party has a burden of proof. Rather, "`both parents share equally the burden of demonstrating how the child's best interest will be served.'" 113 P.3d at 147 (quoting Jaramillo, 823 P.2d at 308). The court has the duty to consider and make findings on the twenty-one factors set out in the Colorado statute, with the focus on the child's best interests. Id. at 147-48. Therefore, the Colorado court balanced the two competing fundamental rights, along with the child's best interests, and determined that if neither party had a presumption or burden of proof, the rights were appropriately balanced and the child's interests taken into account.
Here, the Florida relocation statute expressly states that there is no presumption in favor of or against relocation. Because the Father's constitutional rights must also be considered, we reject the Mother's argument that the lack of a presumption in favor of the Mother is unconstitutional. Further, section 61.13(2)(d) is silent as to the burden of proof. See Gerov v. Holter, 731 So.2d 152, 153 (Fla. 4th DCA 1999); see also Bartolotta v. Bartolotta, 703 So.2d 1229, 1230 n. 1 (Fla. 4th DCA 1998) ("Although there is no longer any presumption favoring relocation, the burden of proof as to whether a relocation meets the statutory criteria is not addressed by the statute.")
When a primary residential parent seeks to relocate a child, section 61.13(2)(d) requires the court to consider all the statutory factors without any presumptions in favor of either party. The factors address, among other things, the relocating parent's quality of life, the other parent's ability to maintain a meaningful relationship with the child, and the child's best interests. See § 61.13(2)(d)(1), (4), (6). Thus, the relocation statute requires the court to consider the competing interests, with an appropriate focus on the parents' rights, along with the best interest of the child. Therefore, the statute does not violate the Mother's right to travel.

Equal Protection
The Mother contends that the relocation statute violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution because it discriminates against primary residential parents. She argues that primary residential parents must obtain permission to relocate, while secondary residential parents need not obtain permission to relocate from the area where their child resides. The Mother cites no equal protection cases in her argument.
An equal protection analysis is appropriate only if similarly situated individuals are treated differently. "Equal protection is not violated merely because some persons are treated differently than other persons. It only requires that persons similarly situated be treated similarly." Troy v. State, 948 So.2d 635, 645 (Fla.2006) (quoting Duncan v. Moore, 754 So.2d 708, 712 (Fla.2000)). In a challenge to a Nevada relocation statute on equal *60 protection grounds, the Nevada Supreme Court recognized that custodial and noncustodial parents are not similarly situated. Reel v. Harrison, 118 Nev. 881, 60 P.3d 480, 483 (2002). The court explained that if the noncustodial parent did not consent to the move, the Nevada statute required the custodial parent to obtain court permission to move with the child. The Nevada Supreme Court, quoting from its earlier opinion in Schwartz v. Schwartz, 107 Nev. 378, 812 P.2d 1268, 1270 (1991), noted the statute's purpose was "`to preserve the rights and familial relationship of the noncustodial parent with respect to his or her child.'" Reel, 60 P.3d at 483 (footnote omitted).
Here, the Mother, as the primary residential parent, must obtain permission to relocate with the children because relocation would affect the secondary residential parent's fundamental right to parent and would limit the Father's access to the children. However, if the Father chooses to relocate out of state, it does not deny the Mother access to her children. Thus, to the extent that a primary residential parent must seek court permission to relocate, the parties are not similarly situated; thus, the statute does not violate the Equal Protection Clause. Therefore, we conclude that the statute is constitutional on its face.

II. DENIAL OF REQUEST TO RELOCATE
The Mother contends that, in applying section 61.13(2)(d), the trial court abused its discretion in denying her relocation request on remand following the earlier appeal. The standard of review regarding a trial court's order on relocation is abuse of discretion. Botterbusch v. Botterbusch, 851 So.2d 903, 904 (Fla. 4th DCA 2003). Competent, substantial evidence must support the trial court's findings as to the factors in section 61.13(2)(d) that the trial court must consider in making its determination. See Berrebbi v. Clarke, 870 So.2d 172, 173 (Fla. 2d DCA 2004); Botterbusch, 851 So.2d at 904. Here, the record reflects competent, substantial evidence to support the trial court's findings, and we cannot say that the trial court abused its discretion in denying the Mother's request to relocate to Texas.
In this court's prior opinion in Fredman v. Fredman, 917 So.2d 1038, 1041 (Fla. 2d DCA 2006), we reversed and remanded for the trial court to again consider the mother's proposed relocation under section 61.13(2)(d), with directions to use the proper standard as stated in section 61.13(2)(d)(4): "Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent."
In its new order, rendered on March 24, 2006, the trial court found that the Mother's proposed substitute visitation schedule "would be adequate to foster a continuing, meaningful relationship between the children and the Father." The trial court adopted the findings in its previous order rendered December 10, 2004, except paragraph 13, which had used the improper standard regarding substitute visitation. Although the court found that the substitute visitation would be adequate, the trial court again denied the relocation request. After considering the statutory factors discussed in the 2004 order and the visitation factor that it reconsidered under the proper standard, the court concluded
that relocation would not be in the best interest of the children, even though it may be in the best interest of the Former Wife and her new husband. The Court finds that the proposed relocation does not benefit the children inasmuch as there has not been a showing that the *61 proposed relocation would improve the children's school, family or even home life. See Berrebbi v. Clarke, 870 So.2d 172, 173 (Fla. 2d DCA 2004).
In its findings, the court recognized that the family would live in a 3000-square-foot home in Texas and that the Mother currently lives in a two-bedroom apartment in Hillsborough County. On cross-examination, however, the Mother admitted that one could find a house in Hillsborough County, Florida, at a cost comparable to the cost of the home in Ponder. The Father also testified that there were homes available in his community in Brandon at a cost comparable to Mr. Melton's home in Ponder.
With respect to schooling, the court found that although the Mother contended that the children would be in a better school in Texas, the Father testified that comparable public schools are available in Hillsborough and that the children were doing well in their present school. The Mother had testified to all the facilities that the children's small private school in Brandon did not have, but she admitted on cross-examination that good public schools were available in Hillsborough County.
With respect to family life, the court recognized both parents' involvement with the children's sport activities. However, the court emphasized that the Father is actively involved with the children and that he and the children share a "passion for bowling." The court also recognized that the children have frequent contact with the Father's relatives in Hillsborough County, including the Father's mother, grandmother, uncles, aunts, and cousins. The Mother has no family in Texas, and the court noted that Mr. Melton's extended family does not reside in Ponder, Texas. In fact, it appears that the children know no one in Ponder other than their stepfather and stepbrother. This is in stark contrast to the excellent relationship that the children have with the Father's family in Hillsborough County.
The trial court recognized that the move would improve the home life for the Mother and her new husband. However, in Berrebbi, this court reversed an order that allowed relocation, stating that "[a]ny evidence regarding the benefits of relocation related to the Mother and her new husband" and that there was no evidence that relocation would be good for the child. 870 So.2d at 173. Here, the Mother believed that relocation would provide certain benefits for the children. However, the Father presented contrary evidence, as well as evidence reflecting that the children's best interests would be served by allowing them to remain in Hillsborough County. Based on this record, we cannot say that the trial court abused its discretion in denying the Mother's request to relocate with the children to Texas.
Affirmed.
WHATLEY and KELLY, JJ., Concur.
NOTES
[1] The legislature significantly amended the parental relocation statute and moved it to section 61.13001, effective October 1, 2006. See Ch.2006-245, §§ 2, 4, at 2017-22, Laws of Fla. The parties did not mention the new statute in their briefs, and the trial court's orders were entered prior to the amendment, pursuant to section 61.13(2)(d). Thus, this opinion does not address section 61.13001.