MOORE, Judge,
concurring in the result.
I agree that the portion of the trial court’s judgment imposing a territorial restriction on the custodial parent’s residence should be affirmed; however, I rest my decision on grounds different from those set out in the main opinion.

I.

The evidence in the record shows that Christopher Meadows (“the father”) and Lisa Meadows (“the mother”) moved to Shelby County in 2002 to set up a permanent residence. Not long after the move, the mother gave birth to the parties’ child. Following the birth of the child, problems between the mother and the father escalated to the point that, on January 5, 2004, the mother left the parties’ permanent residence with the child. Within a few days, the mother had moved temporarily to her parents’ home in Schaumberg, Illinois, taking the child with her. The mother filed for a divorce in Shelby County on January 8, 2004.
The Shelby Circuit Court (“the trial court”) entered a pendente lite order on June 14, 2004, awarding custody of the child to the mother and awarding the father visitation to take place in Illinois two days a month. The father, a commercial pilot, flew to Illinois to attend visitations, using discount fares on commercial flights or piloting private aircraft borrowed from friends. The father would rent a car and a hotel room while in Illinois. The father paid the costs of these visits until the trial court ordered that the mother contribute a share of the costs.
On May 26 and 27, 2005, the trial court conducted a hearing on the divorce complaint. During that hearing, the mother testified that she and the child continued to live in her parents’ home in Schaum-berg, Illinois. In responding to her own attorney’s question, the mother indicated that she understood that the trial court could order her to return to Alabama with the child. During cross-examination, the following colloquy took place:
“[FATHER’S ATTORNEY]: And you do have relatives here in Alabama, don’t you?
“[MOTHER]: Yes, sir.
“Q: I believe you mentioned you have your grandmother — is that right — lives in Anniston?
“A: Yes, sir.
“Q: And you also have — I believe you testified you have an aunt in Huntsville. Correct?
*232 “A: Yes, sir.
“Q: And an uncle in Birmingham?
“A: Yes, sir.
“Q: And we’ve already established you also have friends here in Alabama with whom you can stay if you choose to do so?
“A: Yes, sir.
“Q: Do you have an objection to living in Alabama?
“A: No, sir.”
(Emphasis added.)
Following the May 2005 hearing, the trial court continued the case, divorced the parties, and reserved a decision on other issues, including child custody. The court entered a second pendente lite order granting the father visitation with the child to take place in Alabama and Illinois at various times throughout the summer of 2005. The trial court then concluded the hearing on September 27 and 28, 2005. At that hearing, the mother testified that she wanted joint legal custody, but primary physical custody, of the child. The mother testified as follows:
“[FATHER’S ATTORNEY]: When you were in court back four months ago, as I understood your testimony, you told the Court that you would be willing to move back to Alabama if it meant keeping custody of your son.
“[MOTHER]: I don’t recall saying that.
“Q: You don’t recall that. Would you be willing to move back to Alabama?
“A: I would prefer to be with my support right now.
“Q: I didn’t ask that. I said would you be willing to move to Alabama if it meant getting custody of your son?
“A: I’ll do what the judge orders me to do.”
On December 20, 2005, the trial court entered a final judgment awarding the parties joint legal custody of the child and awarding the mother primary physical custody of the child so long as she returned to Alabama and resided within 60 miles of the parties’ previous address in Calera, “preferably in North Shelby County or South Jefferson County in order to facilitate the parties’ custodial periods and the scheduling of activities revolving around the child, and because of the quality of the area school systems.” The judgment further provided that if the mother did not comply with that provision within 60 days, the father would receive primary physical custody of the child.
On January 5, 2006, the mother filed a postjudgment motion to alter, amend, or vacate the judgment. As grounds for her motion, the mother maintained that the judgment was inconsistent with applicable Alabama law, that the judgment was contrary to the weight of the evidence, and that the judgment was inconsistent with the facts presented at trial. On February 28, 2006, the trial court heard the motion. The record does not contain a transcript of that hearing, but the mother does not assert that she argued in that hearing that the judgment should be set aside based on any infringement of her constitutional rights.
After the hearing, the father and one of his attorney friends met with the trial judge’s wife. Based on that meeting, the mother filed a motion to recuse the trial judge, which was granted on March 17, 2006. That same date, the case was reassigned to a new judge within the same court. The mother then filed with this court a motion to extend the time for a ruling on her postjudgment motion. See Rule 59.1, Ala. R. Civ. P. This court granted the motion on March 30, 2006, giving the new trial judge until April 17, 2006, to rule on the postjudgment motion.
*233 The new trial judge did not rule on the postjudgment motion on or before April 17, 2006; therefore, it was denied by operation of law. See Rule 59.1, Ala. R. Civ. P. On May 12, 2006, the mother filed a Rule 60(b), Ala. R. Civ. P., motion. In that motion, the mother argued that the final judgment should be set aside because the new trial judge had not heard the post-judgment motion. The mother further argued against the territorial restriction on various grounds, including, for the first time, that she had not received “notice and an opportunity to dispute any conditioning of her custody on relocation” and that the restriction “denied [her] liberty without due process of law, as well as her privileges and immunities as a citizen of the United States.”
On May 24, 2006, the new trial judge granted the Rule 60(b) motion and set aside the December 20, 2005, judgment. The trial court ordered a new trial and ordered that, until the new trial, the provisions of the December 20, 2005, judgment would remain in effect. The mother then moved to Alabama with the child to comply with that order.
The trial court conducted a final hearing on October 4, 2006. At that hearing, the mother, an optometrist, testified that she could not find work in her field at wages comparable to those she had earned in Illinois; that she had no relatives in Alabama that she could depend on to assist her with the child and to provide her with emotional support but that she did have such relatives in Illinois; and that she wanted to reside in Illinois where she and the child would be more comfortable and happier. The mother further testified that the father could easily and inexpensively visit the child in Illinois because of his piloting abilities and connections. The father presented evidence indicating that the mother could eventually earn comparable income in Alabama; that he could not easily and inexpensively visit the child in Illinois as the mother claimed; that he and his relatives, in particular the paternal grandmother, would assist the mother with the child; that the child had overcome developmental delays since moving back to Alabama and associating with his paternal relatives; and that the best interests of the child would be served by keeping the child in Alabama. At the conclusion of that hearing, the trial court indicated that it would consider the evidence presented in October 2006, along with the testimony presented at the original hearings in May and September 2005.
On December 29, 2006, the trial court entered a new judgment. The court again awarded the parties joint legal custody, with the mother receiving primary physical custody “subject to [the mother] residing within sixty (60) miles of Shelby County, Alabama.” The judgment indicates that the purpose of that restriction is “to facilitate the parties’ custodial periods and the scheduling of activities revolving around the child” and to assure that the child has regular contact with the father and maintains the supportive relationships and contacts that the child has in Alabama.

II.

The mother argues that the trial court erred in imposing the territorial restriction for several reasons. I originally questioned whether we could even review the substance of the judgment given the testimony of the mother in the 2005 hearings. It appeared to me that she had invited the error of which she complained by stating that she had no objection to being ordered to return to Alabama and that she would reside wherever the trial court ordered her to live. See Casey v. McConnell, 975 So.2d 384, 389 (Ala.Civ.App.2007) (quoting Neal v. Neal, 856 So.2d 766, 784 (Ala.2002))
*234 (“ ‘[a] party cannot win a reversal on an error that party has invited the trial court to commit’ ”). However, the mother successfully convinced the trial court to conduct a new trial on the territorial-restriction issue, at which she testified differently without objection from the father. Therefore, I believe the invited-error doctrine does not apply to the December 2006 judgment.
For an additional reason, I also on first blush believed that the mother had waived her constitutional argument. The mother raised her constitutional challenge to the December 2005 judgment for the first time in her Rule 60(b) motion. I doubt whether any of the provisions of Rule 60(b) authorize a trial court to set aside a judgment based on a constitutional challenge not raised during trial or in a Rule 59 motion. See Harp v. Harp, 462 So.2d 372, 374 (Ala.Civ.App.1984); and Burton v. Burton, 379 So.2d 617, 618 (Ala.Civ.App.1980). However, the father did not cross-appeal or argue to this court that the mother had waived her constitutional argument on that ground; therefore, I believe the court may not review the correctness of the trial court’s order granting the Rule 60(b) motion, and I believe the constitutional argument is properly before the court.

III.

I agree with the main opinion that Alabama courts have the power to assign territorial restrictions based on the best interests of the child and that the evidence supports a finding that the child’s best interests are served by the territorial restriction in this case. 3 So.3d at 226. The issue separating the court is the proper analysis for determining whether a territorial restriction violates a custodial parent’s constitutional right to travel. The majority believes that if the territorial restriction is in the best interests of the child, then for that reason alone it is not unconstitutional. I disagree.
The mother correctly argues that one of the privileges and immunities afforded citizens of the United States is the fundamental right to migrate, resettle, find a new job, and start a new life in a state of his or her own choosing. Shapiro v. Thompson, 394 U.S. 618, 629, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), overruled on other grounds by Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), and Hall v. Hall, 705 So.2d 397, 400 (Ala. Civ.App.1997). I believe, contrary to Cohn v. Cohn, 658 So.2d 479, 481-82 (Ala.Civ. App.1994), overruled on other grounds by T.L.D. v. C.G., 849 So.2d 200 (Ala.Civ.App. 2002), that when a trial court conditions parental custody of a child on the maintenance of a residence within a certain geographical area, that order impinges on the parent’s fundamental right to travel. Although the restriction does not per se prevent the parent from moving outside the geographical area, it does place such a burden on the parent’s movement — the sacrifice of the physical custody of the child — that it has a chilling effect on the parent’s right to travel. See Jaramillo v. Jaramillo, 113 N.M. 57, 64, 823 P.2d 299, 306 (1991) (“[I]t makes no difference that the parent who wishes to relocate is not prohibited outright from doing so; a legal rule that operates to chill the exercise of the right, absent a sufficient state interest to do so, is as impermissible as one that bans exercise of the right altogether.”); and In re Marriage of Ciesluk, 113 P.3d 135, 142 (Colo.2005) (holding that although the Colorado statute at issue “does not prohibit outright a majority time parent from relocating, it chills the exercise of that parent’s right to travel because, in seeking to relocate, that parent risks losing majority parent status with respect to the minor child”).
*235 Cases from within Alabama and elsewhere uniformly hold that a restriction on a parent’s right to travel is not unconstitutional if it is imposed to protect a compelling interest. See Memorial Hosp. v. Maricopa County, 415 U.S. 250, 254, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974); Hall, 705 So.2d at 400; Everett v. Everett, 660 So.2d 599, 601-02 (Ala.Civ.App.1995); and In re Custody of D.M.G., 287 Mont. 120, 951 P.2d 1377 (1998). In upholding territorial restrictions against constitutional challenges, our past cases concentrate exclusively on the parens patriae state interest of promoting the best interests of the child. See Everett, supra; and Hall, sit-pra. Those cases hold that the state has a compelling interest in promoting the best interests of the child and that that interest alone is sufficient to justify a court order restricting a custodial parent from moving with the child outside a specified area.
“‘“Parens patriae,” literally “parent of the country,” refers traditionally to role of state as sovereign and guardian of persons under legal disability.’ ” Ex parte Bayliss, 550 So.2d 986, 988 n. 1 (Ala.1989) (quoting Black’s Law Dictionary 1003 (5th ed.1979)). Pursuant to the parens patriae doctrine, “ ‘ “the primary control and custody of infants is with the government, to be delegated, as of course, to their natural guardians and protectors, so long as such guardians are suitable persons to exercise it.” ’ ” Ex parte Wright, 225 Ala. 220, 222, 142 So. 672, 674 (1932). See also Fletcher v. Preston, 226 Ala. 665, 148 So. 137 (1933); and Striplin v. Ware, 36 Ala. 87 (1860). In other words, the state is the father and mother of the child and the natural parents are not entitled to custody, except upon the state’s beneficent recognition that natural parents presumably will be the best of its citizens to delegate its custodial powers. See Chandler v. Whatley, 238 Ala. 206, 208, 189 So. 751, 753 (1939) (quoting Striplin v. Ware, 36 Ala. at 89) (“ ‘The law devolves the custody of infant children upon them parents, not so much upon the ground of natural right in the latter, as because the interests of the children, and the good of the public, will, as a general rule, be thereby promoted.’ ”).
In a string of decisions, the United States Supreme Court has impliedly rejected the theory underlying the parens patriae doctrine by recognizing that it is a natural parent, not the state, who has a fundamental right to the care, custody, and control of a child. See Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); Pierce v. Society of Sisters, 268 U.S. 510, 535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (“The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations.”); Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (“It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children ‘come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.’ ” (quoting Kovacs v. Cooper, 336 U.S. 77, 95, 69 S.Ct. 448, 93 L.Ed. 513 (1949) (Frankfurter, J., concurring))); Wisconsin v. Yoder, 406 U.S. 205, 232, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) (“The history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children. This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition.”); Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978); Parham v. J.R., 442 U.S. 584, 602, 99 S.Ct. 2493, 61 L.Ed.2d *236 101 (1979) (“Our jurisprudence historically has reflected Western civilization concepts of the family as a unit with broad parental authority over minor children. Our cases have consistently followed that course.”); Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); and Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (“The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court.”). Therefore, the state may no longer be considered “the parent of the country,” and it is the actual parents, not the state, who maintain a compelling interest in promoting the best interests of the child. R.S.C. v. J.B.C., 812 So.2d 361, 365-66 n. 1 (Ala. Civ.App.2001) (plurality opinion) (citing Hawk v. Hawk, 855 S.W.2d 573 (Tenn. 1993) (rejecting argument that state has compelling interest in the best interests of a child); and Hoff v. Berg, 595 N.W.2d 285, 291-92 (N.D.1999)).
In many cases, such as the one at bar, the parties, both of whom are fit parents, hold equal custodial and constitutional rights to the child. See Fredman v. Fredman, 960 So.2d 52, 56 (Fla.Dist.Ct.App. 2007) (“To the extent that the mother is arguing that she has a fundamental light as a parent to decide where her children live, she must recognize that the father shares the same fundamental right.”). In the course of a divorce proceeding, when the parties cannot reach an agreement as to that course of action that serves the best interests of the child, a state court has the jurisdiction to resolve that dispute. Morgan v. Morgan, 964 So.2d 24, 29-30 (Ala.Civ.App.2007). However, I cannot agree that the limited power to adjudicate disputes between two fit parents and to decide which of two parental choices corresponds most closely with the best interests of the child vests the state with a compelling interest in the child. Hence, I would not rely on the state’s interest in promoting the best interests of the child as a justification for the territorial restriction.[3]
The father and the child share reciprocal fundamental constitutional rights to association with one another. See Fredman, supra; see also McQuinn v. McQuinn, 866 So.2d 570, 573 (Ala.Civ.App.2003) (“We note that although the mother, not [the] father, is the primary physical custodian of the children, the father’s fundamental right to direct the care, control, and association of his children is no less fundamental and protected than the right of the mother to do the same.”); and Jackson v. Jackson, 999 So.2d 488, 494 (Ala.Civ.App. 2007) (Moore, J., with Pittman and Thomas, JJ., concurring in the result) (“The children have a fundamental right to free association with their mother.”). Hence, the noncustodial parent and the child have a compelling interest in assuring that their fundamental constitutional rights are not unduly impaired by the custodial parent’s choice of residence. If the state has any compelling interest in the matter, it is in preserving the familial relationship between the father and the child. See Soohoo v. Johnson, 731 N.W.2d 815, 822 (Minn.2007) (holding that a state has a compelling interest in promoting relationships among those in recognized family *237 units). It is that interest that a trial court is required to balance against the mother’s right to travel when deciding whether to employ a territorial restriction. See Fred-man, supra.

IV.

In this case, the trial court assigned the territorial restriction because it believed that the restriction will assure a continuing and meaningful relationship between the father, the noncustodial parent, and the child. The mother testified that the father was a good parent, and the evidence shows that the child’s relationship with the father has had a positive impact on the child. The mother does not argue that the relationship between the father and the child should be discouraged; rather, the mother merely argues that their relationship would not be impaired if she and the child returned to Illinois.
The mother first points out that the father can maintain the same relationship with the child because of the father’s unique ability to travel cheaply and easily to Illinois. The evidence on that point was conflicting, and the trial court evidently determined that the costs and scheduling involved would make it impractical for the father to fly routinely to Illinois to exercise visitation and that the consequent decrease in visitation would undermine the relationship between the father and the child. Based on our standard of review, we cannot disturb a finding based on conflicting evidence. V.L.T. v. C.T.T., 603 So.2d 1076, 1077 (Ala.Civ.App.1992).
The mother also points out that because of his work schedule the father is out of the prescribed area for at least one-half of every month. Although the father somewhat disagrees with that assessment, it is undisputed that the father spends and will spend many days outside Alabama while working. The father’s work schedule undoubtedly interferes with his ability to visit and associate personally with the child. The trial court could have reasonably concluded that any further protracted interference should be avoided. By imposing the territorial restriction, the trial court assured that during the long periods when the father was not working, he could actually be with the child, rather than traveling to and from Illinois in a mere effort to see the child. Although I do not necessarily agree that the territorial restriction was the only method available to the trial court to address this problem, the mother has not argued that the trial court failed to use the most narrowly tailored means of protecting the father and the child’s right to familial association, and based on our standard of review, we cannot substitute our opinion for that of the trial court. Ex paite Roberts, 796 So.2d 349, 351-52 (Ala. 2001).

V.

Because the trial court properly found that the territorial restriction will protect the familial relationship between the child and the father, it did not act unconstitutionally in imposing that restriction on the mother, although the restriction does impinge on her right to travel to and reside in Illinois. Therefore, I concur in the af-firmance of the trial court’s judgment.

. In her initial appellant’s brief to this court, the mother argued that a court cannot attempt to control the residence of a child's custodian " ‘unless clear evidence ... establishes the detrimental effect .. . upon the children.' " (Quoting Watt v. Watt, 971 P.2d 608, 616 (Wyo.1999)). However, at oral argument the mother abandoned that position. Therefore, I do not address the issue whether the state’s compelling interest in protecting children from parental harm may warrant the imposition of a territorial restriction.